UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MISTY MARIE HAYES,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

No. 2:15-CV-00243-LRS

**ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT,** *INTER ALIA*

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 15).

## JURISDICTION

Misty Marie Hayes, Plaintiff, applied for Title II Disability Insurance benefits (DIB) and Title XVI Supplemental Security Income benefits (SSI) on September 20, 2010, alleging she has been disabled since August 31, 2006. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing and hearings were held on December 14, 2011, and April 24, 2012, before Administrative Law Judge (ALJ) Marie Palachuk. On June 13, 2012, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review despite the Plaintiff's submission of additional information and evidence. Plaintiff appealed to the U.S. District Court for the Eastern District of Washington. On May 28, 2013, pursuant to stipulation of the parties, the Hon. Thomas O. Rice remanded the case for further administrative proceedings. (ECF No. 19 in CV-13-00358-TOR).

On May 11, 2015, ALJ Palachuk conducted a remand hearing at which Plaintiff testified, as did Vocational Expert (VE) Thomas Polsin. On July 10, 2015, the ALJ

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 1**

issued a decision finding the Plaintiff not disabled. Plaintiff did not submit any written exceptions to the Appeals Council and therefore, the Appeals Council did not review the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. That decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative remand hearing, Plaintiff was 38 years old. She has a high school education and past relevant work experience as a home health aide and as a cashier. Plaintiff alleges disability since August 31, 2006, on which date she was 30 years old.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) improperly rejecting the opinion of her treating provider, Sylvia Rojas, M.D.; and 2) failing to meet her Step Five burden to identify specific jobs, existing in significant numbers in the national economy, which are compatible with Plaintiff's functional limitations.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I) and 416.920(a)(4)(I). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments: Arnold-Chiari malformation, status post-excision of syrinx, arthritis, obesity, cervicalgia, right sided sciatica, bilateral sacroilitis, migraine headaches, and chronic dysesthetic pain; 2) Plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §404.1567(a) and §416.967(a), except she needs an option to stretch/move around for two to three minutes every 15 to 20 minutes; her performance of postural activities is limited to "occasional," except that climbing ladders, ropes and scaffolds is precluded; and she needs to avoid concentrated exposure to hazards and no more than moderate exposure to noise, vibration and respiratory irritants; 4) Plaintiff's RFC does not allow her to perform her past relevant work; but 5) does allow her to perform other jobs existing in significant numbers in the national economy, including hand packager, telephone solicitor and cashier II. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**TREATING PHYSICIAN/CREDIBILITY**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998));

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 5**

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Smolen v. Chater,* 80 F.3d 1273, 1285-88 (9th Cir. 1996); *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Lester,* 81 F.3d at 830. If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *See Flaten*, 44 F.3d at 1463; *Fair*, 885 F.2d at 605. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Plaintiff saw Sylvia Rojas, M.D., between June and December 2011. (Tr. at pp. 862-72). Dr. Rojas specializes in neurology and internal medicine. (Tr. at p. 848). In December 2011, Dr. Rojas completed a form entitled "Treating Physician Opinion Re: Ability To Do Work-Related Activities (Physical)." Dr. Rojas indicated the maximum weight the Plaintiff could carry on an occasional basis (up to 1/3 of an eight hour workday) was 10 pounds; the maximum she could carry on a frequent basis (1/3 to 2/3 of an eight hour workday) was less than 10 pounds; that her maximum ability to stand and walk (with normal work breaks) during an eight hour workday was one hour; and that her maximum ability to sit (with normal work breaks) during an eight hour workday was less than two hours. (Tr. at pp. 841-42). Dr. Rojas indicated that Plaintiff needed to sit/stand or walk at will; that she could sit 10 to 15 minutes before changing position; that she could stand 5 to 10 minutes before changing position; that she needed to walk around every 10 to 15 minutes; and that she needed to spend 15 minutes walking before she sat back down. (Tr. at p. 842). Dr. Rojas indicated Plaintiff could occasionally twist, stoop, crouch and climb stairs (very little to 1/3 of an eight hour workday), but could never climb ladders. (Tr. at

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

p. 843). She also indicated that Plaintiff could never reach, handle (gross manipulation), finger (fine manipulation), nor push or pull. According to Dr. Rojas, this was because Plaintiff "has decreased tactile sensation." Dr. Rojas stated these findings were supported by her neurological examination. (Tr. at p. 844). Dr. Rojas opined that Plaintiff's impairments or treatment would cause Plaintiff to be absent from work more than three times a month. (Tr. at p. 845). Dr. Rojas was asked whether in her medical opinion, the Plaintiff was "capable of performing low-stress, simple, repetitive, sedentary or light work . . . on a full time, competitive and sustained basis." (Tr. at p. 846). Her answer was:

> Currently[,] Misty is not able to sustain in a meaningful way full time employment due to her various neurologic conditions of sciatica, migraine headaches and residual symptoms of Chiari decompression.

(Tr. at p. 846). Dr. Rojas opined that these limitation existed prior to September 30, 2011. (Tr. at p. 846).

The ALJ found that Dr. Rojas' opinion with regard to Plaintiff's manipulative limitations was contradicted by her findings on examination of the Plaintiff. According to the ALJ: "the claimant's muscle strength was noted to be at 5/-5, which is minimally diminished muscle strength. If the claimant could never use her hands, as suggested by Dr. Rojas, examination would have shown significant atrophy." (Tr. at p. 886). Dr. Rojas, however, did not indicate that Plaintiff's problem was one of muscle strength, but that instead that it was a neurological problem. Moreover, Dr. Rojas did not indicate that Plaintiff could "never use her hands" in any situation, only that she could not use them to perform the overhead reaching, handling and fingering responsibilities that would be required as part of a full-time job. As such, contrary to the ALJ's assertion, Dr. Rojas' opinion regarding Plaintiff's manipulative limitations is not undercut by the ALJ's observation at the hearing that Plaintiff walked into the room carrying a water bottle, placed the bottle on the table and reached for it several times during the hearing to drink from it, and then at the

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

conclusion of the hearing, picked up the bottle and took it with her. (Tr. at p. 886). Nor is Dr. Rojas' opinion undercut by Plaintiff's hearing testimony regarding her ability to brush her teeth, feed herself using a fork, knife and a spoon, and to reach for toilet paper and use it. (Tr. at p. 886).

The ALJ found that Dr. Rojas' November 2011 examination of Plaintiff was "inconsistent with the tremendously restrictive opinion she provides regarding [Plaintiff's] limitations." (Tr. at p. 886). The ALJ noted that this examination showed intact muscle bulk, tone and strength at 5/5 and light touch, temperature and vibration sense were intact over the distal extremities. (Tr. at p. 886). Again, Dr. Rojas indicated the issue was not one of muscle strength and furthermore, in a December 2011 examination, Dr. Rojas noted that Plaintiff had "diminished sensation to pin over distal tips of her fingers." (Tr. at p. 870). The ALJ did not explain in her decision how other findings from the November 2011 examination- intact hand swing with forward gait and appropriate base with upright truncal posture- undermined any of the limitations (manipulative and otherwise) opined by Dr. Rojas. (Tr. at p. 886).

In her decision, the ALJ said this about Dr. Rojas' opinion as it related to the ALJ's RFC determination:

> [T]he residual functional capacity determined . . . takes Dr. Rojas' opinion into account and incorporates portions of it. However, the doctor's allegation that claimant could stand less than 1 hour a day and sit for less than 2 hours a day is rejected. The restriction would mean the claimant was in bed for 21 hours a day. Furthermore, Dr. Rojas' conclusion that the claimant had to walk around for 15 minutes every
>
> 15 minutes is inconsistent with the other "conclusion" that the claimant could only be on her feet for one hour a day.

(Tr. at p. 886).

Nothing in Dr. Rojas' opinion remotely suggests that Plaintiff was spending 21 hours a day in bed. Dr. Rojas' opinion concerns Plaintiff's capacity to sit and stand in an eight hour workday, not in a 24 hour period. It is true that if Plaintiff had to walk around every 10 to 15 minutes for a period of 15 minutes, she would end up

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

walking and being on her feet in excess of one hour in an eight hour work day, but that is consistent with Dr. Rojas' ultimate conclusion that Plaintiff "is not able to sustain in a meaningful way full time employment."

The ALJ chose to give "great weight" to the opinions of two medical consultants who never examined the Plaintiff and rendered their opinions based on the written medical record which pre-dated Dr. Rojas' examinations of the Plaintiff in the latter half of 2011. (Tr. at p. 884, citing November 2010 record review by Guillermo Rubio, M.D., and February 2011 record review by Charles Wolfe, M.D.).

The Commissioner notes that the ALJ took issue with Plaintiff's credibility regarding her subjective allegations of pain and limitations, and that Plaintiff has not challenged that determination on appeal to this court. An ALJ can only reject a plaintiff's statement about limitations based upon a finding of "affirmative evidence" of malingering or "expressing clear and convincing reasons" for doing so. *Smolen v. Chater,* 80 F.3d 1273, 1283-84 (9th Cir. 1996). "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony." *Tonapeytan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). See also *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002)(following factors may be considered: 1) claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).

The ALJ pointed out that in April 2011, Patrick Soto, D.O., following his examination of the Plaintiff, indicated that one of his "impressions" was "[c]hronic pain without pain, malingering, drug seeking behaviors." (Tr. at p. 768). There is nothing in Dr. Soto's report, however, which explains this conclusion. In her decision, the ALJ asserted that "the medical record suggests drug seeking by the

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

claimant," referring to hospital notations from November 2009. The ALJ also pointed out another notation from that period of time indicating Plaintiff's primary doctor had been contacted and he relayed that Plaintiff had missed multiple appointments and therefore, had been dismissed as a patient. (Tr. at pp. 883-84). A mere "suggestion" of drug seeking is not affirmative evidence of malingering and is not a clear and convincing reason for discounting credibility, particularly so when the allegations date from nearly two years prior to Dr. Rojas' opinion.

In her decision, that ALJ asserted that "[a] suggestion of exaggeration and malingering is part of the claimant's medical record:"

> In his assessment in November 2010, a medical consultant referred to a neurologist who concluded the claimant would become better with more exercise and more expansion of activities. [Citation omitted]. With the claimant failing to progress more since her surgery, the suggestion was she might be self-limiting.

(Tr. at p. 883). Once again, a mere "suggestion" is not affirmative evidence of malingering, nor a clear and convincing reason for discounting credibility. The medical consultant in question is Dr. Rubio. As noted above, he did not actually examine the Plaintiff and the neurologist to which he refers is not Dr. Rojas. (Tr. at p. 273).

The ALJ pointed to evidence in the record regarding Plaintiff's daily living activities. Plaintiff testified that she lives with her mother and relies on her mother to help take care of her children, more so when Plaintiff suffers from migraines. (Tr. at p. 906). The ALJ found the fact that Plaintiff "functioned as a parent (in all respects, other than getting them ready for school according to her mother's statement . . .), despite the exertional and mental requirements of this task, indicates a greater ability to perform tasks than suggested by [Plaintiff's mother] overall." (Tr. at p. 888). The ALJ also pointed to notes from Dr. Soto that Plaintiff was "independent in her self-activities of daily living, independent in her car, toilet and bed transfers, and independent in her mobility." (Tr. at p. 883).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

"The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Rather, "[i]t is only where the level of activity is inconsistent with a claimed limitation that the activity has any bearing on credibility." *Id*. Daily activities therefore "may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of h[er] day engaged in pursuits involving physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). To conclude that a claimant's daily activities warrant an adverse credibility determination, the ALJ must make specific findings relating to the daily activities and the transferability of the activities to the workplace. *Id*. Here, the ALJ did not make such findings. Accordingly, Plaintiff's daily activities do not constitute a "clear and convincing" reason for discounting her credibility regarding her exertional and non-exertional limitations (including manipulative limitations).

Because the ALJ did not offer adequate reasons for discounting Plaintiff's credibility, her credibility analysis does not undermine Dr. Rojas' opinion about Plaintiff's limitations. In sum, the ALJ did not offer "specific and legitimate" reasons

///
///
///
///
///

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

supported by substantial evidence for rejecting the limitations opined by Dr. Rojas.[1]

**STEP FIVE**

At the administrative remand hearing, the VE indicated that if Plaintiff were limited to reaching, handling and fingering less than occasionally, there were no other jobs she would be capable of performing. (Tr. at p. 924). The VE also acknowledged that if Plaintiff needed to actually walk around while on the job, that "might" also impact his opinion on her ability to perform other jobs. (Tr. at p. 924). And finally, the VE acknowledged that an individual who had at least two and up to four absences from work in a month could not sustain competitive employment. (Tr. at p. 925).

These, of course, are the limitations opined by Dr. Rojas which the ALJ improperly discounted. Accordingly, the Commissioner did not meet her step five burden of establishing there are other jobs existing in significant numbers in the national economy which the Plaintiff is capable of performing, notwithstanding her exertional and non-exertional limitations.

**REMAND**

Social Security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional

---

[1] In her decision, the ALJ cited chart notes from physician visits between November 2014 and February 2015. (Tr. at p. 883). The reports from these visits do not constitute either clear or convincing reasons to discount Plaintiff's credibility or specific and legitimate reasons to reject Dr. Rojas' opinions.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Id*., citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a remand. The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful. *Id*. at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*. Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceedings." *Id*., quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied- ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and there is no question the claimant is disabled- the court has discretion to depart from the ordinary remand rule and remand for an immediate award of benefits. *Id*. But even when those "rare circumstances" exist, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Id*. at 1102, quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

///

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 13**

The court finds all three elements are satisfied here and that a second remand for further administrative proceedings would merely delay an award of benefits. Because the ALJ did not offer adequate reasons to reject the opinion of Dr. Rojas as to Plaintiff's physical limitations, it follows that there are not adequate reasons to reject her opinion that these limitations existed prior to September 30, 2011, the date on which Plaintiff was last insured for Title II benefits. Accordingly, Plaintiff's disability onset date is deemed to be June 15, 2011, the date on which Plaintiff resumed seeing Dr. Rojas.[2]

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 14) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 15) is **DENIED**. The Commissioner's decision is **REVERSED**. Pursuant to sentence four of 42 U.S.C. §405(g) and § 1383(c)(3), this matter is **REMANDED** to the Commissioner for immediate payment of Title II benefits consistent with this order. An application for attorney fees may be filed by separate motion.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this    3rd    day of May, 2016.

s/Lonny R. Suko

LONNY R. SUKO
Senior United States District Judge

---

[2] On the form she completed, "Treating Physician Opinion Re: Ability To Do Work-Related Activities (Physical)," Dr. Rojas indicated she began treating Plaintiff in "2007 & 2011." (Tr. at p. 841), although the court did not find confirmation of such treatment in the medical record.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 14**